Commonwealth of Pennsylvania    :
                            :
           v.                :    No. 742 C.D. 2016
                            :    Submitted: October 14, 2016
George Cannarozzo,         :
            Appellant    :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
              HONORABLE JULIA K. HEARTHWAY, Judge
              HONORABLE JOSEPH M. COSGROVE, Judge

**OPINION**
**BY JUDGE SIMPSON**                 **FILED: March 1, 2017**

        George Cannarozzo (Landlord) asks whether the Court of Common Pleas of Luzerne County[1] (trial court) erred in entering a guilty verdict after trial on summary appeal on 10 of 11 citations issued for violations of the 2012 International Property Maintenance Code (IPMC), adopted by Ordinance Number 7 of 2007 (Ordinance) of West Hazleton Borough (Borough). Landlord contends the Borough violated his constitutional and statutory rights by entering his property without his consent and without a warrant. He also asserts the trial court erred in determining he failed to correct the Ordinance violations to the extent necessary. Discerning no error below, we affirm.

## I. Background

        Landlord owns the property located at 10-12 East Oak Street in West Hazelton (property), which is improved with a five-unit apartment building. The

---

[1] The Honorable Michael T. Vough presided.

Borough's Code Enforcement Officer (Code Enforcement Officer) first became aware of violations at the property when contacted by the mother of a tenant who was moving out. Tr. Ct. Hr'g, Notes of Testimony, 1/27/16 (N.T. I), at 5; Reproduced Record (R.R.) at 9a. The Code Enforcement Officer subsequently visited and inspected the subject property. N.T. I at 5-6; R.R. at 9a-10a. One of Landlord's tenants allowed the Code Enforcement Officer entry into the property. Id. Upon inspection, the Code Enforcement Officer "jot[ted] down everything that was found," and she took pictures. Id.

Thereafter, the Code Enforcement Officer issued notices of violation to Landlord by certified and regular mail. The post office returned the certified mail items as undeliverable. N.T. I at 11; R.R. at 11a. The notices of violation described 11 violations the Code Enforcement Officer observed when she inspected the property.[2] N.T. I at 13-22, 29-36; R.R. at 11a-14a, 15a-17a.

The issuing authority found Landlord guilty on each of the 11 violations. See R.R. at 1a (docket entry). Thereafter, Landlord appealed to the trial court.

---

[2] The 11 violations of the Ordinance were identified in the notices. The violations encompassed missing or ripped screens throughout the property; lack of a working door knob on the main entrance; a hole in a living room wall; lack of a ground fault interrupter electrical outlet in a kitchen; ungrounded electrical outlets; a loose electrical outlet; a non-working shared-hallway light; missing light covers throughout the property; missing smoke detectors, fire extinguishers and carbon monoxide monitors throughout the property; a leaking toilet; a compromised floor surrounding the leaking toilet, and removal of a "condemnation" placard from the front door of the property. N.T. I at 13-21, R.R. at 11a-13a.

2

After presentation of the Borough's evidence at the first trial court hearing (First Hearing), the trial court allowed the parties time to resolve the matters by permitting Landlord to make repairs and show compliance through a follow-up inspection by the Code Enforcement Officer. N.T. I at 36-37; R.R. at 17a. At that time, the parties agreed to a follow-up inspection on February 3, 2016. Tr. Ct. Hr'g, Notes of Testimony, 4/6/16 (N.T. II), at 3-5, 7, 21; R.R. at 78a, 79a, 82a. As a result, at the end of the First Hearing, the trial court held the record open and retained jurisdiction. N.T. I at 36-37; R.R. at 17a.

At the request of the parties, the trial court reconvened in April 2016 (Second Hearing). At the Second Hearing, the trial court questioned Landlord as to why he never appeared for the agreed-upon re-inspection. Landlord asserted he was unaware of the appointment scheduled for February 3, 2016. Landlord asked for another appointment to allow inspection. The trial court denied that request. Ultimately, the trial court concluded the Borough established Landlord violated the Ordinance on 10 of the charges, and it fined him $200 plus costs on each of the 10 violations.[3] N.T. II at 3-5, 7, 21-29; R.R. at 78a, 79a, 82a-84a. Landlord appealed to this Court.

Thereafter, the trial court issued an order requiring Landlord to file a concise statement of the errors complained of on appeal pursuant to Pa. R.A.P. 1925(b) (1925(b) Statement). In his 1925(b) Statement, Landlord claimed a constitutional violation when the Code Enforcement Officer entered the property

---

[3] The trial court found Landlord not guilty on the eleventh citation (removing the condemnation placard from the front door of the property). Tr. Ct. Hr'g, Notes of Testimony, 4/6/16, at 28-29.

without his consent and without a warrant. Landlord also asserted he corrected the violations to the extent necessary, and the trial court erred to the extent that it found to the contrary.[4]

In its subsequent opinion pursuant to Rule 1925(a), the trial court concluded that Landlord did not ask the court to make a ruling on whether the Code Enforcement Officer's initial entry was unlawful; therefore, the issue was waived. The trial court also observed the issue "could have been addressed had [Landlord] filed a suppression motion. His failure to do so also results in waiver." Tr. Ct., Slip Op., 6/30/16, at 2.

The trial court further quoted Section 104.3 of the IPMC, entitled "Right of Entry." That Section provides that when a code official has reasonable cause to believe that a structure contains a condition that violates the IPMC, the code official may go to the structure and request entry from an occupant. The trial court determined that the Code Enforcement Officer became aware of violations at the property and was allowed to enter the property by a tenant. Id. The trial court concluded this course of action complied with Section 104.3 of the IPMC. Id.

In response to Landlord's second assignment of error, the trial court explained that the parties agreed upon a meeting at the property on February 3, 2016, to give Landlord the opportunity to demonstrate that the alleged violations had been remedied. However, Landlord failed to appear for that meeting, so there

---

[4] In his 1925(b) Statement, Landlord also questioned whether the Code Enforcement Officer possessed the requisite training and experience to issue citations; however, that issue is not pursued in the current appeal.

4

was no way for the Code Enforcement Officer to determine if compliance had occurred. The only credible evidence before the court was of Landlord's guilt; evidence of compliance was not credible. Id. at 2-3. The trial court asked this Court affirm its ruling on the citations.

## II. Issues

On appeal,[5] Landlord raises two issues. First, he asserts the trial court erred in determining there was no constitutional violation when the Code Enforcement Officer entered his property without his consent and without a warrant. Second, Landlord argues the trial court erred in determining Landlord failed to correct the alleged code violations to the extent necessary.

## III. Discussion
### A. Unreasonable Search/Illegal Entry

We seriously question whether the constitutional issue of an unreasonable search by the Code Enforcement Officer was fairly put to the trial court for decision. There was a brief reference by Landlord at the end of the Second Hearing to a case, "Tobin versus—someone else," for the proposition that the Code Enforcement Officer "is not supposed to go in and issue any citations without the owner's permission." N.T. II at 26-27; R.R. 83a-84a. But, neither the Landlord *nor his lawyer* offered the full title of the case, offered a copy of the case, or offered a case citation. Id.

---

[5] Our review is limited to determining whether the trial court abused its discretion or committed an error of law. Commonwealth v. Halstead, 79 A.3d 1240 (Pa. Cmwlth. 2013).

5

Landlord's lawyer now argues his client was trying to reference Commonwealth v. Tobin, 828 A.2d 415 (Pa. Cmwlth.), appeal denied, 841 A.2d 533 (Pa. 2003). Because there was some vague reference to the case before the trial court, we will examine the extent to which that authority applies here.

The Ordinance adopted the 2006 version of the IPMC, and all of its subsequent amendments. N.T. I at 4; R.R. at 9a; Plaintiff's Ex. Nos. 1-2. Section 104.3 of the 2012 version of the IPMC, entitled "Right of Entry," provides in pertinent part (with emphasis added):

> Where it is necessary to make an inspection to enforce the provisions of this code, or whenever the code official has reasonable cause to believe that there exists in a structure or upon a premises a condition in violation of this code, the code official is authorized to enter the structure or premises at reasonable times to inspect or perform the duties imposed by this code, provided that if such structure or premise is occupied the code official shall present credentials to the occupant and request entry.

R.R. at 27a. Thus, the IPMC allows entry without a warrant upon "reasonable cause" to believe a violation exists and upon permission of an occupant. Id. If those two pre-conditions are not met, the code official "shall have recourse to the remedies provided by law to secure entry." Id. In other words, in the absence of "reasonable cause" and permission of an occupant, the code official must obtain a warrant to enter.

Here, the Code Enforcement Officer testified that she first became aware of the violations existing on the property when a tenant's mother called to

6

complain of Ordinance violations. N.T. I at 5; R.R. at 9a. After arriving at the property, the tenant allowed the Code Enforcement Officer entrance to the property. N.T. I at 6; R.R. at 10a. There is no evidence that the Code Enforcement Officer inspected any part of the building beyond that occupied by the consenting tenant. As the trial court concluded, this course of action complies with Section 104.3 of the IPMC and the Ordinance.

In a rental situation, it has long been recognized that the Fourth Amendment to the U.S. Constitution operates primarily to protect the privacy interest of the tenant rather than the landlord. See, e.g., Chapman v. United States, 365 U.S. 610 (1961); Commonwealth v. Davis, 743 A.2d 946 (Pa. Super. 1999). Given the satisfied requirements of "reasonable cause" and consent of an occupant, we discern no constitutional violation here.

Moreover, the case vaguely referenced by Landlord, Tobin, does not compel a different conclusion, for several reasons. First, the inspection ordinance in Tobin required the code official to obtain either permission of the *owner*, or a warrant, and the code official failed to obtain either. Id. at 418-19. Thus, the ordinance in Tobin was significantly different than the Ordinance here. Second, there was no consent to entry in Tobin, but there was consent to entry by an *occupant* here. For these reasons, the Tobin decision has no applicability to this case.

Instead, we conclude that our unreported opinion in Altman v. Borough of Wilmerding (Pa. Cmwlth., No. 459 C.D. 2014, filed January 8, 2015),

7

2015 WL 5122619 (Simpson, J.), is persuasive. In <u>Altman</u>, an owner was prosecuted for property code violations. He raised many defenses, including a challenge to the constitutionality of the code official's entry into the property. The owner relied on the decision in <u>Tobin</u>. However, we declined to apply <u>Tobin</u> because, like the present case, an *occupant* consented to the code official's entry. <u>Altman</u>, Slip Op. at 16-17; 2015 WL 5122619 at *8. In relevant part, we stated that the decision in <u>Tobin</u> does not "set forth a bright-line requiring municipalities to obtain administrative warrants prior to inspecting property for safety purposes. … In light of evidence of consent to search by the person in possession of the property, we discern no merit to the improper search challenge." <u>Altman</u>, Slip Op. at 17; 2015 WL 5122619 at *8. We reach the same conclusion here.

### B. Failure to Correct

Landlord next argues the trial court erred when it determined Landlord failed to correct the alleged violations. Landlord testified at length at the Second Hearing regarding the measures he took to remediate the conditions. Landlord maintains the trial court apparently accepted his testimony on the eleventh violation, because it found him not guilty as to that violation. Because the trial court found him not guilty on the eleventh violation, Landlord asserts, the trial court ignored all of his testimony regarding the measures he took to remediate the violations, which amounts to an abuse of discretion. Landlord therefore contends the trial court's determination that he failed to correct the conditions is not supported by substantial evidence.

Where a trial court receives additional evidence in deciding whether a party committed a summary violation of an ordinance, our review is limited to

8

determining whether the trial court abused its discretion or committed an error of law. Commonwealth v. Halstead, 79 A.3d 1240 (Pa. Cmwlth. 2013). The trial court, as the trier of fact passing upon the credibility of witnesses and the weight to be afforded the evidence presented, is free to believe all, part or none of the evidence. Commonwealth v. Griscavage, 517 A.2d 1256 (Pa. 1986).

Here, contrary to Landlord's assertions, the trial court specifically declared: "There was no credible evidence of compliance." Tr. Ct., Slip Op., at 3. Therefore, the fact-finder rejected Landlord's testimony of compliance from the Second Hearing. Instead, the trial court determined: "The only credible evidence before this Court established [Landlord's] guilt beyond a reasonable doubt." Id.

In light of the trial court's express credibility determinations, the extensive testimony of the Code Enforcement Officer, and her photographs of violations, we discern no error or abuse of discretion in the trial court's resolution of this issue.

For all the foregoing reasons, we affirm.

 

 

_____
ROBERT SIMPSON, Judge

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania      :
     :
     v.      :      No. 742 C.D. 2016
     :
George Cannarozzo,      :
     Appellant      :

# **O R D E R**

**AND NOW**, this 1st day of March, 2017, the order of the Court of Common Pleas of Luzerne County is **AFFIRMED**.

---

ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania           :
                                       :
            v.                         :
                                       :
George Cannarozzo,                     :     No. 742 C.D. 2016
              Appellant                :     Submitted: October 14, 2016


BEFORE:    HONORABLE ROBERT E. SIMPSON, Judge
           HONORABLE JULIA K. HEARTHWAY, Judge
           HONORABLE JOSEPH M. COSGROVE, Judge


DISSENTING OPINION
BY JUDGE COSGROVE                       FILED:  March 1, 2017


I take issue with the Majority's view that the persuasive value of the unreported opinion in *Altman v. Borough of Wilmerding,* (Pa. Cmwlth., No. 1429 C.D. 2014, filed January 8, 2015), 2014 WL 2999703, trumps the binding precedent found in *Commonwealth v. Tobin*, 828 A.2d 415 (Pa. Cmwlth.), *appeal denied*, 841 A.2d 533 (Pa. 2003).  The distinction the Majority makes between these two cases, and the reason for applying *Altman's* rationale, is the presence of an "occupant consent" provision in the code at issue here (something not relevant in *Tobin*).

The essence of *Tobin*, however, was its emphasis on the importance of obtaining a warrant, even in the administrative context, while also noting the relative ease with which such administrative warrants may be secured, stating that "obtaining an administrative warrant should be a matter of routine." *Tobin,* 828 A.2d at 423.

Routine as it may be, the warrant requirement is an essential check on unbridled governmental action, a check which is ever so slightly (but consequentially) eroded by the Majority opinion. As such, I must, respectfully, dissent.

_____
JOSEPH M. COSGROVE, Judge