## PIERCE v. GILLET & CO.
### No. 6241.

United States Court of Appeals for the District of Columbia.

Argued Dec. 5, 1934.

Decided Feb. 4, 1935.

Levi H. David and Alan B. David, both of Washington, D. C., for appellant.

J. Raymond Hoover and James A. Davis, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

HITZ, Associate Justice.

This appeal is from a directed verdict and judgment of the Supreme Court of the District of Columbia in an action growing out of the purchase and sale of certain shares of stock.

The plaintiff below was a brokerage firm and alleged that on October 18, 1929, it agreed with defendant below, who is appellant here, to sell him fifty shares of the preferred stock (with warrants) of the Firestone Tire & Rubber Company at $99 per share, and dividend, when, as, and if issued. By a letter of the same date to the defendant the plaintiff confirmed the sale, about ten days thereafter the stock was issued, the defendant was notified thereof, and billed therefor.

The defendant failed either to call for the stock as requested, or to pay for it, and in March, 1930, the salesman of the company who had made the sale called upon the defendant. This visit resulted in defendant giving plaintiff a demand note for $1,000 as additional security and promising to make payments thereon, while the plaintiff agreed to take no action to collect the account for one year.

The defendant, through his attorney, paid $290 on account within the year, but on June 16, 1932, this action was filed for $4,634.42; the amount then appearing due after crediting dividends and debiting interest.

Thereafter the plaintiff sold the stock and applied the proceeds of $2,431.75 to the account.

At the conclusion of all the evidence the court directed a verdict for the plaintiff for $2,189.26, being the amount then due on the account, if anything.

The defendant had pleaded that the plaintiff's agent, the salesman, had not sold him the stock but simply obtained permission to use his name as a purchaser with his house, upon the understanding between them that when the stock was issued it could and would be sold at a profit, and that no money from defendant would be required in payment; and, further, that any contract alleged by the plaintiff did not comply with the statute of frauds, Code D. C., title 11, c. 1, § 4.

At the trial the defendant attempted a further defense by offering evidence that plaintiff had assigned the claim to the Baltimore-Gillet Company, of which it had become an affiliate or subsidiary.

This testimony being excluded by the trial court, its action is assigned here as error on the ground that plaintiff was not the proper party to bring the action under title 2, chapter 1, sections 3 and 4, of the District Code; and, further, that the contract was not good under the statute of frauds.

The proffered testimony tended to prove that the Gillet Company had assigned its claims and assets to the Baltimore Company, which, in turn, assigned them to the Baltimore-Gillet Company, a new corporation.

These transactions took place in the course of a consolidation of the Baltimore Company and the Gillet Company into the Baltimore-Gillet Company.

While the testimony proffered might prove an assignment of this claim, it does not show that under the plan of consolidation either the Baltimore Company or the Gillet Company were to go out of business, and the whole testimony tended to prove that the Gillett Company, at least, was still doing business.

It is apparent from the record that the testimony was excluded because the defense had not been pleaded, as required, for the court said to the defendant's counsel: "You have evidently known of this ever since this suit was established. There has been no motion made." To which counsel replied: "I have not had this paper in my possession until recently." But he still made no motion to amend even at that time.

Our practice requires that defenses be pleaded, and to that end provides liberally for amendments. But on the record as it stood, and was permitted to remain, the court did not err in excluding the evidence. Had the evidence been introduced, and not refuted, it might have proven that the action was not in the name of the assignee as permitted by our Code, or in the name of the assignor to the use of the assignee, as the practice was at common law; but an action by an assignor after his assignment. Glenn v. Marbury, 145 U. S. 499, 508, 12 S. Ct. 914, 36 L. Ed. 790; Yeaton v. Lynn, 5 Pet. 224, 231, 8 L. Ed. 105; Society for Propagation, etc., v. Town of Pawlet, etc., 4 Pet. 480, 501, 7 L. Ed. 927; Conard v. Atlantic Insurance Co., 1 Pet. 386, 7 L. Ed. 189; Philadelphia, W. & B. Railway Co. v. Quigley, 21 How. 202, 214, 16 L. Ed. 73; Hayward v. Andrews, 106 U. S. 672, 675, 1 S. Ct. 544, 27 L. Ed. 271; Equity Rules 1, 2, 3, and 6 (28 USCA § 723), and law rules 2, 3, and 27 Supreme Court, D. C.; Canfield et al. v. McIlwaine et al. to Use of Wood, Trustee, 32 Md. 94, 100.

As to defense of the statute of frauds, the record contains:

1. The company's letter to the defendant acknowledging his order, the amount and kind of stock, and the price thereof.

2. A letter from the company several months later describing the indebtedness and agreeing to postpone action thereon for a year in consideration of defendant's note for $1,000 as additional security.

3. The note above mentioned.

4. A letter from defendant's attorney to the company, referring to that agreement and note, and concluding: "Payments aggregating two hundred dollars have been made on account of the one-thousand-dollar note, and I am advised by Dr. Pierce that within one week of the date hereof he will be in a position to make payments to cover the months during which no payments were made."

5. Seven letters from the defendant's attorney inclosing payments on account.

6. Six letters from the company acknowledging receipt of the payments.

These writings, taken together, sufficiently set forth the subject-matter and terms of the contract, and the payments on account thereof.

Excepting the company's acknowledgment of payments, the letters are signed by a conceded agent of the defendant.

In Bayne v. Wiggins, 139 U. S. 210, 11 S. Ct. 521, 523, 35 L. Ed. 144, the court, speaking of such a letter, says: "This letter of the defendants' agent, read in connection with the other writings which had passed between the parties, unequivocally refers to the first deed, which fully described the land sold, and to the money and notes to be given in payment therefor, as specified in the letter which enclosed that deed. In the light of the undisputed facts, its language could apply to nothing else. It thus, by necessary reference, embodies a definite statement of the contract actually made by the parties, both as to the property to be conveyed, and as to the terms of payment; and, taken together with that deed and that letter, constitutes a sufficient memorandum, signed by both parties or their agents, to take the case out of the statute of frauds."

To the same effect are: Ryan v. United States, 136 U. S. 68, 10 S. Ct. 913, 34 L. Ed. 447; Butler v. Thomson, 92 U. S. 412, 23 L. Ed. 684; Bibb v. Allen, 149 U. S. 481, 13 S. Ct. 950, 37 L. Ed. 819; Barry v. Coombe, 1 Pet. 640, 7 L. Ed. 295; Shell v. White, 62 App. D. C. 332, 68 F.(2d) 379.

And it is immaterial that these papers were written after instead of before or at the time of the contract. Thorn v. Browne (C. C. A.) 257 F. 519; Purdom Co. v. Western Union Tel. Co. (C. C.) 153 F. 327; Dunlap v. Hopkins (C. C. A.) 95 F. 231.

This evidence was admissible; it met the requirements of the statute; and for the foregoing reasons the judgment is affirmed with costs.

Affirmed.