Sam WINKLER, Appellant,

v.

FRANK–CUNNINGHAM STORES CORP.,
t/a L. Frank Co., Appellee.

FRANK–CUNNINGHAM STORES CORP.,
t/a L. Frank Co., Appellant,

v.

Sam WINKLER, Appellee.

Nos. 4589, 4590.

District of Columbia Court of Appeals.

Argued April 28, 1969.

Decided Oct. 3, 1969.

Mark P. Friedlander, Jr., Washington, D. C., with whom Mark P. Friedlander, Blaine P. Friedlander, Washington, D.C., Harry P. Friedlander and Marshall H. Brooks, Arlington, Va., were on the brief, for Sam Winkler.

Nathan L. Silberberg, Washington, D. C., with whom Howard B. Silberberg, Washington, D.C., was on the brief, for Frank-Cunningham Stores Corp.

Before HOOD, Chief Judge, and FICK-LING and GALLAGHER, Associate Judges.

HOOD, Chief Judge.

These consolidated appeals concern the claim and counterclaim of the parties resulting from the termination of a long-standing employment relationship. No findings of fact or conclusions of law were entered by the trial court, but we are able to determine, from the trial record and the court's memorandum opinion, what facts were necessarily found and what theory of law was applied.

## I. FACTS

In August of 1949, Winkler entered the employ of Frank-Cunningham Stores (hereafter, the company), to assist in the management of the company's retail clothing business. At this time, and for several years thereafter, Winkler's remuneration from the company totaled $15,000.00 per annum, which was paid at a rate of $1,000.00 a month and an additional $3,000.00 in August, the anniversary of his coming with the company. As an employee, Winkler was permitted to charge items which he purchased from the store, on an account with the company. This account was settled once a year, in August, when Winkler received his "year-end" payment. This arrangement continued through the years, changing only to the extent that Winkler's remuneration was increased along with his responsibilities. Between 1958 and 1965, Winkler received $23,500.00 per annum, which was paid at $1,500.00 a month plus a "year-end" payment of $5,500.00.

In the early part of 1966, Winkler, for reasons not material here came to feel that his position with the company was in jeopardy. He had several meetings in New York with the president of the company concerning his apprehensions. He also sought, and found, new employment, in the store of a competitor of the company located across the street from the company's downtown Washington store. Winkler left the company on June 1, 1966, and went to his new job. Shortly thereafter, several of the company's other employees quit and joined Winkler across the street.

## II. CLAIM AND COUNTERCLAIM

In September of 1966, Winkler filed suit against the company, demanding $4,-583.33, or 5/6 of his anticipated "year-end" salary payment. The complaint alleged that the president of the company, at a meeting in New York, had promised Winkler that he would receive, in August, that portion of the "year-end" payment which corresponded to the ten months of his work year that Winkler worked prior to his resignation, and that the company refused to make such payment.

The company denied Winkler's allegations, and counterclaimed for $1,363.73—which represented the amount which Winkler admittedly owed on his account with the company—and for a sum in excess of $30,000.00 compensatory and punitive damages, for Winkler's alleged "piracy" of several of the company's employees. This counterclaim was dismissed in toto pursuant to pretrial motions. When the case came to trial, the company moved to have it reinstated. The trial judge decided not to disturb the pretrial order, but agreed that the $1,363.73 would be allowed as an item of setoff, should Winkler prevail. It is from the ruling of the trial court refusing to entertain the company's claims for affirmative relief that appeal No. 4590 is taken.

At trial, Winkler abandoned his contention that the basis of his claimed rights in the "year-end" payment derived from the promise of the company's president, but asserted, instead, that his right to a pro rata portion of the "year-end" payment was inherent to the employment relationship; that from its inception in 1949, it was understood that the "year-end"

payment constituted an integral part of Winkler's annual salary.

The company countered with the theory that the payment was a gratuitous bonus, which was payable or not at the discretion of the company. At the close of the evidence, the trial court made a preliminary finding that the "year-end" payment represented salary, not a gratuity, and asked the parties to submit post trial briefs on this issue.

The company's memorandum took the approach that even if the "year-end" payment was the type of bonus the payment of which is enforceable, Winkler could not recover because he terminated his employment with the company prior to the time that payment was to be made, and thus forfeited any rights which he might have had in it.

The trial court accepted this theory and ruled that it was applicable to the case before it. Judgment was entered in favor of the company. It is from this judgment that appeal No. 4589 is taken.

## III.  APPEAL NO. 4589

Winkler's chief complaint, on appeal, is that the trial court applied a theory in resolving the case which was not considered at trial, but appeared only in the post trial memoranda. We note that Winkler is hardly in a strong position to complain inasmuch as his theory of recovery at trial was not even alleged in his complaint. In any event, we find the trial finding to be within the scope of inquiry and amply supported by the evidence.

The record indicates that the employment relationship in this case was not governed, at least as to the contingency which caused the claim, by any express agreement. In such a case, we look to the nature of the relationship and the conduct of the parties in order to ascertain its incidents.

■ We hold that, in view of the consistency with which the "year-end" payments were made—in terms of both time and amount—the trial court properly found the payments to constitute deferred salary rather than a discretionary bonus. We note that there are two types of deferred salary. In one, the right to payment vests as it accrues, the contemplation of the parties being that the debt is not to be deferred, only the time of payment. A common example of this type is vacation pay rights. Where the time of payment is deferred only, the employee generally has the right to his deferred salary even if he voluntarily quits. United States v. Munro-Van Helms Co., 243 F.2d 10 (5th Cir. 1957).

■ With the second type of deferred salary, the contemplation of the parties is that rights in the deferred sum do not vest until the anticipated time or event occurs. A common example of this type is the Christmas, or "thirteenth-month" payment. This type of arrangement is characteristic of an intention that the payment be not solely for compensating past services but also for inducing continued services in the future. Where this is the case, the voluntary termination of employment by the employee works a forfeiture of potential rights in the deferred payment. Watwood v. Potomac Chemical Co., D.C.Mun.App., 42 A.2d 728 (1945).

■ We agree with the trial court that the deferred payment in this case is of the latter type. If rights in the "year-end" payment vested as they accrued, there would be no purpose in deferring payment. The manner in which the company compensated Winkler can only be interpreted as being intended to induce continued employment. Part of the consideration for the payment was service for a full work year. Winkler having voluntarily quit prior to that time, he cannot claim rights in any of the anticipated payment.

## IV.  APPEAL NO. 4590

This appeal questions the action of the trial court respecting the company's coun-

terclaim. As previously stated the counterclaim intermingled two wholly unrelated claims. One claim was for $1,363.00, representing goods purchased by Winkler from the company, charged to his account, and intended to be deducted from his "year-end" payment. The second claim alleged a willful and malicious disclosure of confidential information by Winkler and a willful and malicious piracy by him of the company's employees. The counterclaim concluded by demanding judgment of $10,000.00 compensatory damages, and $25,000.00 punitive damages. Prior to trial a motion to dismiss the counterclaim had been granted with leave to amend. The amended counterclaim was essentially the same as the original and it too had been ordered dismissed.

At trial the company took the position that its counterclaim had been dismissed only in respect to its tort claim and not as to the $1,300.00 claim. The trial court however accepted Winkler's contention that the counterclaim had been dismissed in its entirety and refused to modify the ruling of the pretrial judge. Counsel for the company stated to the trial court that if that ruling stood, "we will have to seek relief at some other time." What counsel meant by this remark, we do not knew; but when the court announced that should Winkler prevail on his claim, the $1,300.00 could be deducted from it, both parties appeared to be satisfied. As Winkler did not prevail, the question of the use of the $1,300.00 item as a setoff never arose. After the testimony was completed and the court asked for memoranda on the questions of law, counsel for the company asked if the court could "allow the $1,-300.00." The court announced that in view of the objection by Winkler, it could not and "[s]o you will have to come again and file a suit." It is not at all clear whether counsel was asking the court to "allow" the $1,300.00 as a setoff or as an independent claim. Neither is it clear whether the court was reversing its former ruling that the $1,300.00 could be used as a setoff.

Much of the confusion regarding the $1,300.00 claim is due to the company's persistence in tying this claim in with its claim for unliquidated damages for alleged tortious acts. The company does not now assert that the dismissal of its tort claim was improper, but asserts that the dismissal did not include the $1,300.00 claim. It should have cleared up that matter before trial by application to the pretrial judge, and if necessary sought leave to file a second amended counterclaim on the $1,300.00 alone.

The company now asks this court to order judgment in its favor for the $1,-300.00. Its position is that Winkler in answer to an interrogatory admitted owing the company that amount. The answer, however, was not an unconditional admission. It admitted only that such sum was properly deductible from the "year-end" payment claimed to be due. The status of the employee's account in the event no "year-end" payment materialized was not determined and we cannot decide the question. If error was committed with respect to the counterclaim, such error was due in large part to the action of the company, and we are not disposed to attempt to correct it.

Affirmed.