**EDUCATIONAL ENTERPRISES, INC.,**
Appellant,

v.

**Paul C. GREENING, Appellee.**

No. 5094.

District of Columbia Court of Appeals.

Argued March 9, 1970.

Decided May 5, 1970.

R. Harrison Pledger, Jr., Washington, D. C., with whom Charles E. Pledger, Jr., Washington, D. C., was on the brief, for appellant.

James J. Bierbower, Washington, D. C., entered an appearance for appellee but filed no brief.

Before HOOD, Chief Judge, and GALLAGHER and NEBEKER, Associate Judges.

NEBEKER, Associate Judge.

This appeal presents the question whether under the statute of frauds [1] parol evidence was properly used to interpret an informal memorandum written and signed by an employer some nine months after an oral promise to pay the employee a certain annual salary. A jury returned a verdict for appellee-employee manifesting a finding that appellant had agreed to pay the employee $25,000 for services during 1960, and that the memorandum served to memorialize the agreement.

In 1959, Mr. Leonard Melley, president of appellant corporation, went to appellee, a former employee, and asked him to return to work for the company. Subse-

---

1. D.C.Code 1961, § 12–302 provided in pertinent part:

    "No action shall be brought whereby to charge any * * * person * * * upon any agreement that is not to be performed within the space of one year from the making thereof, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, which need not state the consideration, and signed by the party to be charged therewith or some other person thereunto by him lawfully authorized."

    Now *see* D.C.Code 1967, § 28–3502.

quently, around Christmas of that year, they again conferred and Melley stated that he would pay appellee $25,000 "in 1960." When appellee inquired how payment would be arranged Melley replied, "Well, I just don't know yet. I'm going to figure it out, and I'll let you know." Appellee returned to the company and agreed to a salary schedule of $200 per week "until the situation (*i. e.,* the company's financial condition) improved." During the course of the year, the weekly schedule was increased to $300 per week.

In June of that year appellee wrote a letter to Melley requesting that the difference between the weekly payments and the higher amount, in part be made available to him. It was not until a meeting in September that the matter was again brought up. Melley then stated, "Well, Paul, you tell George [the payroll officer] to pay it to you." Melley set up a formula whereby appellee was to receive the difference in four equal installments—one-third in September, one-sixth each in October and November, and one-third in December. Appellee requested Melley to "put it in writing" and Melley thereupon wrote the memorandum in question on company stationery bearing his name. The handwritten memorandum was introduced into evidence. It stated:

"14 Sept. 1960

P.C.G. =
Earnings—Salary and Bonus for 1960 total $25,000 = ⅓ Sept., ⅙ Oct., ⅙ Nov., ⅓ Dec., on amt. between present salary and $25,000.

LM"

Appellee was paid the first two installments, but then, on Melley's request, agreed to defer the latter two payments until 1961 because of financial limitations of the company. Appellee was discharged effective the end of January, 1961, for the stated reason that he had been disloyal in attempting to persuade another employee to leave and go into business with him. Appellee then brought suit for the balance of the installments.[2]

The trial judge ruled that the jury should decide whether the language of the memorandum, "Earning—Salary and Bonus", meant guaranteed earnings of $25,000 for the year or potentially that amount depending upon the company's financial ability to pay a bonus and whether appellee's services warranted it. Appellee's testimony supported the former and Melley's the latter. We hold that in the context of this case, the trial judge did not err and that the language of the memorandum was open to jury interpretation based upon parol evidence as to company policy regarding bonuses.

Contrary to appellant's contention, the law is not that extrinsic evidence may never be used as an aid in interpreting a memorandum of an oral contract. *See* 2 Corbin on Contracts § 527 (1950), which states in part:

"It seems clear that parol evidence is admissible to explain and apply a note or memorandum of an oral contract within the statute of frauds whenever it would be admissible for the purpose of interpreting or determining the operation of

---

2. We do not agree with appellant's contentions that the evidence was insufficient to support the verdict and that appellee forfeited his right to what appellant characterizes as a "deferred payment" because of a breach of loyalty in the employment relationship. The evidence as outlined, *infra*, supports a finding that appellant agreed to employ appellee at a sum certain for the year in question and that appellee performed his part of the agreement by working during that entire year. The evidence of such agreement negates

the assertion that the unpaid amount was a bonus. Appellee's reluctant acquiescence in deferring payment of this amount was to accommodate appellant and did not thereby bring the payment within Watwood v. Potomac Chem. Co., D.C.Mun. App., 42 A.2d 728 (1945). To the contrary, only the time of payment was deferred. *See* United States v. Munro-Van Helms Co., 243 F.2d 10 (5th Cir. 1957); and Winkler v. Frank-Cunningham Stores Corp., D.C.App., 256 A.2d 905, 907 (1969).

an integrated contract or a writing that purports to be the operative expression of the will of its creator. Indeed, oral evidence is admitted with considerably greater liberality in cases under the statute than in cases of integrated contracts."

*See also* Miles v. Vermont Fruit Co., 98 Vt. 1, 124 A. 559, 562 (1924); Gibson v. De La Salle Institute, 66 Cal.App.2d 609, 152 P.2d 774, 780 (1944).

While it may be true that resort to the original *oral agreement* may not be had to explain the terms of the memorandum,[3] our reading of the record reveals that other extrinsic evidence—company policy and practice regarding bonuses—served to explain the meaning of the memorandum. That evidence, of course, is not subject to the vice sought to be avoided by the statute of frauds as it is objectively trustworthy.

It was the practice that the payroll officer would calculate a tentative bonus for each employee in accordance with salary and tenure. The amount also depended upon the success of the business during the year. The calculation was made in December of each year. These figures were then submitted to Melley for approval or modification. With the introduction of evidence of this practice a jury might reasonably conclude that the term "Earnings-Salary and Bonus for 1960 to total $25,000" meant that appellee's "earnings" were "to total $25,000" for 1960 and that no further bonus was to be forthcoming as might otherwise be the practice.

We think that the rule permitting use of parol evidence to explain the meaning of certain terms of an informal memorandum is designed for a case such as this. After all, "no writing or memorandum can ever be the complete and perfect witness sufficient in itself to establish the contract and its terms * * *." *2 Corbin on Contracts* § 527, *supra.*

We do not read our opinion in Easter v. Kass-Berger, Inc., D.C.Mun.App., 121 A.2d 868 (1956), as precluding such a conclusion. The general rule that the essential terms of the agreement must be expressed in writing without resort to parol evidence was not there stated in a context requiring delineation of the recognized exceptions. Moreover, the parol evidence in this case did not supply an essential term of the agreement. It merely served to explain that appellee's total earnings for the year were to be $25,000 and that he would not receive any additional amount by way of a discretionary Christmas bonus.

One final point deserves comment. During the trial, counsel for appellant raised the point that the memorandum must be made contemporaneously with the oral agreement in order to remove the latter from the statute of frauds. The parties submitted no authority to support their respective position but appellee asserted there was no case law requiring contemporaneous writing. The point was specifically ruled upon in Pierce v. Gillet & Co., 64 App.D.C. 156, 75 F.2d 675 (1935), where the court said, " * * * it is immaterial that these papers were written after instead of before or at the time of the [oral] contract." *Id.* at 157, 75 F.2d at 676. Accordingly, the fact that Melley did not make the memorandum until nine months after the oral promise is of no legal significance.

The judgment of the trial court is

Affirmed.

---

3. 49 Am.Jur. Statute of Frauds § 354 (1943).