## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Dorothy Rivera, Eddy Omar Rivera, Kathleen O'Connor, Rosemarie O'Connor, Estate of Thomas O'Connor, and Steven Camburn | : **CASES CONSOLIDATED**<br>:<br>:<br>:<br>: |
| v. | :<br>: |
| Borough of Pottstown and Keith A. Place,<br>             Appellants | :<br>:<br>: No. 190 C.D. 2024 |

| | |
|---|---|
| Dorothy Rivera, Eddy Omar Rivera, Kathleen O'Connor, Rosemarie O'Connor, Estate of Thomas O'Connor, and Steven Camburn,<br>             Appellants | :<br>:<br>:<br>:<br>:<br>: |
| v. | :<br>: |
| Borough of Pottstown and Keith A. Place | : No. 224 C.D. 2024<br>: Argued: March 5, 2025 |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE STACY WALLACE, Judge
               HONORABLE MATTHEW S. WOLF, Judge

OPINION
BY JUDGE WALLACE                      FILED:  December 9, 2025

      The Borough of Pottstown and Keith A. Place, the Borough's Director of Licensing and Inspections (collectively, the Borough), appeal from the

January 24, 2024 order of the Court of Common Pleas of Montgomery County (trial court) to the extent the trial court denied the Borough's motion for summary judgment and granted the request of Dorothy Rivera, Eddy Omar Rivera, Kathleen O'Connor, Rosemarie O'Connor, the Estate of Thomas O'Connor, and Steven Camburn (collectively, Tenants),[1] to enjoin the Borough from conducting non-consensual, suspicionless searches to inspect for housing code violations pursuant to the Borough's Code of Ordinances[2] (Code). Tenants[3] cross-appealed from the trial court's order to the extent the trial court denied Tenants' cross-motion for summary judgment. Upon careful review, we affirm, in part, reverse, in part, and remand this matter to the trial court for entry of an order consistent with this Opinion.

## I. Background

This is not the first time the parties' dispute has reached this Court. In a previous Memorandum Opinion vacating the trial court's order granting the Borough's motion for judgment on the pleadings, a panel of this Court succinctly explained the background of the parties' dispute as follows:

> The Borough's [Code] includes provisions governing rental properties. The purpose of those provisions is "to encourage owners and occupants to maintain and improve the quality of rental housing" in the Borough. [Code] § 11-201(1).
>
> In June 2015, the Borough enacted a number of housing ordinance amendments. At issue here, the amendments included provisions requiring each owner of rental property to permit inspections of all rental units every two years. *Id.*, § 11-206(1) (2015). If voluntary

---

[1] The Designated Appellants represent owners, landlords, and tenants, but are collectively referred to herein as Tenants.

[2] Borough of Pottstown, Pa., Code of Ordinances (1993), *as amended*.

[3] By Order dated May 14, 2024, this Court consolidated the Borough's and Tenants' appeals and designated Tenants as Appellants.

access for an inspection is denied, the [Code] allows the Borough to apply for an administrative warrant. *Id.*, § 203(1)(I)(3) (2105).

. . . .

Tenants refused voluntary access to their rental units by Borough inspectors. The Borough applied for, and obtained administrative warrants, which Tenants unsuccessfully opposed.

*Rivera v. Borough of Pottstown* (Pa. Cmwlth., No. 722 C.D. 2019, filed January 6, 2020) (footnote omitted).

Tenants filed an Amended Complaint in the trial court on July 26, 2017, alleging the Borough violated their rights of privacy and freedom from unreasonable searches under article I, section 8 of the Pennsylvania Constitution[4] by using administrative search warrants to inspect rental properties for potential housing code violations without individualized probable cause of a housing code violation. Reproduced Record (R.R.) at 39a-57a. Tenants requested the trial court declare the Borough's Code provisions authorizing administrative warrants on less than individualized probable cause of a housing code violation unconstitutional, both facially and as applied to Tenants. *Id.* at 57a. Tenants also requested the trial court enjoin the Borough from seeking administrative warrants to conduct rental property inspections with less than individualized probable cause of a housing code violation, award nominal damages, and award any other relief the trial court deemed just. *Id.*

---

[4]   Article I, section 8 provides:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

PA. CONST. art. I, § 8.

The Borough filed an Answer, admitting it obtained administrative warrants to search Tenants' properties, but denying its Code provisions violated Tenants' Pennsylvania constitutional rights and requesting the trial court deny Tenants' requested relief. *See* R.R. at 60a-76a. The Borough raised a new matter in its Answer, asserting its Code provisions were valid under the Pennsylvania Constitution, both facially and as applied to Tenants. *Id.* at 76a. The Borough also raised numerous defenses to Tenants' Amended Complaint and requested judgment in its favor plus costs and attorneys' fees. *Id.* at 77a-79a.

In June 2018, the Borough filed a motion for judgment on the pleadings, which the trial court granted by order dated May 10, 2019. R.R. at 81a-83a. Tenants appealed to this Court, and a panel of this Court vacated the trial court's order and remanded this case to the trial court "for development of a full record" with respect to the operation of the Borough's Code provisions.[5] *Id.* at 87a.

On remand, the parties completed discovery and filed cross-motions for summary judgment. In its motion for summary judgment, the Borough argued its Code does not violate Tenants' constitutional rights and that the Borough was entitled to judgment as a matter of law. R.R. at 128a-39a. In their cross-motion for summary judgment, Tenants argued they were entitled to judgment as a matter of law because the Borough's Code provisions authorizing administrative warrants for biennial rental inspections without individualized probable cause violate their rights under article I, section 8 of the Pennsylvania Constitution. *Id.* at 873a-75a. Tenants requested the trial court declare the Borough's Code provisions unconstitutional and

---

[5] This Court also vacated and remanded three of the trial court's discovery orders. *See* R.R. at 81a-82a. We need not, however, delve into those orders because they are not relevant to our analysis.

4

enjoin the Borough from conducting rental property inspections pursuant to those Code provisions. *Id.* at 873a-75a.

In its Opinion, the trial court explained the Borough's relevant Code provisions as follows:

> The Borough's [Code] requires each residential unit be inspected biennially, upon a property transfer, upon a complaint that a violation has occurred, or where there is reasonable cause to believe a violation is occurring. (Chapter 5, Part 8, §801).
>
> As it relates to the power to inspect,
>
>> The owner shall permit inspections of the premises by the Licensing and Inspections Officer at reasonable times upon reasonable notice. If the owner does not permit such inspection of the premises by the Licensing and Inspections Officer, the Licensing and Inspections Officer may apply for an administrative warrant to inspect the premises.
>
> (Chapter 11 §203(1)(3); (as amended by Ord. 2137 (6/8/2015))[)]. Additionally,
>
>> The occupant(s) shall comply with all obligations imposed by this Part and all applicable codes and ordinances of the Borough of Pottstown, as well as all state laws and regulations.
>
> (Chapter 11 §203(J)(2)(A); §203(J)(1)).

Trial Ct. Op., 1/24/24, at 5.

The Borough admits it has submitted Affidavits in support of its applications for administrative warrants which do not contain individualized probable cause of housing code violations. *Id.* at 5-6. Specifically, the Borough's Affidavits have simply stated the Borough was denied permission to enter a rental property to conduct a biennial inspection and the Code both requires biennial inspections and

5

authorizes administrative warrants. *Id.* The Borough also admits it received administrative warrants based on these Affidavits. *Id.* The Borough acknowledges its Code does "not contain a notice requirement for the owner or occupant of a residence to be apprised of the date or time the affiant would appear before the issuing magistrate for application of the search warrant." *Id.* at 6. "Similarly, the [Code does] not require that the owner or occupant of a residence be notified of the date and time of execution of the warrant (i.e., the search)." *Id.*

The trial court explained "Borough inspectors utilize a Rental Checklist . . . as a guideline during the inspection." *Id.* The Borough's Rental Checklist "contains one hundred and thirty separate items to be inspected with a corresponding box to check confirming all areas to be inspected." *Id.* at 7. "In addition to the Rental Checklist, the Borough's housing inspectors are guided by Rental Inspection Standard Operating Procedures ("SOPs"). The SOPs and Rental Checklist are designed to ensure all inspectors operate in a consistent and transparent manner." *Id.* at 6.

The trial court, after analyzing Federal and Pennsylvania jurisprudence on the Fourth Amendment to the United States Constitution and article I, section 8 of the Pennsylvania Constitution, concluded the Borough's Code provisions are facially valid. *Id.* at 19. Nevertheless, the trial court also concluded "the Borough's practices, as authorized by its [Code], violate the Tenants' privacy protections embedded in Article I, Section 8 of the Pennsylvania Constitution." *Id.* at 18. As a result, the trial court granted Tenants' as-applied challenge to the Borough's Code provisions and enjoined the Borough from conducting non-consensual, suspicionless rental inspections "unless and until the Borough enacts amendments to its [Code] to provide" written notice to owners and occupants of an application for an

6

administrative warrant, similar notice of the execution of an administrative search warrant, and "judicial consideration of reasonable restrictions on the inspection."[6] R.R. at 4097a. The trial court also denied the Borough's and Tenants' cross-motions for summary judgment. *Id.* at 4096a.

The Borough appealed from the trial court's order enjoining it from enforcing its Code and denying its motion for summary judgment. Tenants cross-appealed from the trial court's order denying their cross-motion for summary judgment.

## II.    Issues

On appeal, the Borough and Tenants both argue the trial court's order denying their respective motions for summary judgment is appealable because the trial court's order resolved the parties' competing claims such that it constitutes a final order.[7] The Borough raises three additional issues in its appeal. First, the Borough asserts Tenants waived their issue that the Borough's Code provisions are not facially valid. Second, the Borough asserts the trial court erred in determining the Borough's Code, as applied, violates article I, section 8 of the Pennsylvania Constitution. Finally, the Borough asserts the trial court committed various errors in granting declaratory relief and requiring the Borough to undertake certain specific actions.

Tenants raise one additional issue for our review: whether the trial court erred in denying their motion for summary judgment and holding administrative search warrants can be issued on less than individualized probable cause.

---

[6]   Despite finding the Borough's Code provisions facially constitutional, the trial court's remedy is tailored to cure a facial invalidity.

[7]   By Order dated May 14, 2024, this Court directed the parties to address the appealability of the trial court's order denying the parties' cross-motions for summary judgment in their principal briefs on the merits.

7

### III.    Analysis

"Our standard of review on appeal from the grant or denial of summary judgment is de novo, and our scope of review is plenary." *Clean Air Council v. Sunoco Pipeline L.P.*, 185 A.3d 478, 485 (Pa. Cmwlth. 2018) (citation omitted). "In other words, we do not defer to the [trial court's] conclusions of law, and we reassess the record with a fresh pair of eyes." *Allegheny Cnty. Dep't of Health v. Wilkerson*, 329 A.3d 111, 117 (Pa. Cmwlth. 2024). "Our review is limited to determining whether the trial court committed an error of law or abuse of discretion." *Clean Air Council*, 185 A.3d at 485 (citation omitted). "Summary judgment is only appropriate where, upon examination of the record in the light most favorable to the nonmoving party, no genuine issue of material fact exists and the moving party is clearly entitled to a judgment as a matter of law." *Id.* at 485-86 (citation omitted).

### A.  Appealability of Order Denying Cross-Motions for Summary Judgment

Before we address the merits of the parties' arguments, we must first address the appealability of the trial court's order to the extent it denied the parties' cross-motions for summary judgment.[8] Tenants and the Borough both argue the trial court's order denying their cross-motions for summary judgment is appealable because it constitutes an order in a declaratory judgment action that declared the status of their constitutional rights. *See* 42 Pa.C.S. § 7532 (a declaration of "rights, status, and other legal relations . . . shall have the force and effect of a final judgment or decree"). In addition, Tenants and the Borough both argue the trial court's order denying their cross-motions for summary judgment is a final order because it

---

[8]   To the extent the trial court enjoined the Borough's application of its Code provisions, the trial court's order is appealable as of right. *See* Pa.R.A.P. 311(a)(4).

disposes of all claims and all parties. *See* Pa.R.A.P. 341(b)(1) ("A final order . . . disposes of all claims and of all parties.").

Although orders denying summary judgment are typically not final, appealable orders, *Pennsylvania Turnpike Commission v. Atlantic Richfield Company*, 394 A.2d 491 (Pa. 1978), they are final, appealable orders if they "dispose[] of all claims and of all parties." Pa.R.A.P. 341(a). Here, although the trial court was tasked with ruling on the parties' cross-motions for summary judgment, the trial court did not reference or apply the standards for evaluating motions for summary judgment. *See generally* Trial Ct. Op., 1/24/24. Rather, the trial court made factual findings on contested issues of material fact. *Id.* As a result, the trial court's opinion sounds as a final adjudication on the merits. The trial court's order also has the practical effect of a final order because the trial court ruled on each of the parties' claims, thereby declaring their constitutional rights, and leaving no further issues remaining for the trial court to resolve. *See id.* Consequently, we agree with the parties that the trial court's order is appealable both as an order in a declaratory judgment action which declared the status of the parties' constitutional rights and as a final order.[9] *See* 42 Pa.C.S. § 7532; Pa.R.A.P. 341(b)(1).

## B. Waiver

Next, the Borough asserts Tenants waived review of the trial court's determination that the Borough's Code provisions are facially valid. Specifically, the Borough argues Tenants did not assert before this Court that the trial court

---

[9] Although the trial court did not apply the proper standards in reviewing the parties' cross-motions for summary judgment, our standard of review permits this Court to review the record and determine if, "in the light most favorable to the nonmoving party, no genuine issue of material fact exists and the moving party is clearly entitled to a judgment as a matter of law." *Clean Air Council*, 185 A.3d at 485-86 (citation omitted).

committed any error in determining the Borough's Code provisions were facially valid. *See* Borough's Br. at 42. Instead, the Borough argues Tenants focused "solely on error based upon the finding that individualized probable cause is not required for [an administrative] warrant." *Id.* Interestingly, if this Court addressed Tenants' assertion about individualized probable cause and determined such was required for issuance of an administrative warrant, the Borough's Code provisions authorizing administrative warrants would be facially unconstitutional. As a result, Tenants' issue necessarily includes a challenge to the trial court's determination the Borough's Code provisions are facially valid, and the Borough's waiver issue is without merit.

## C. Article I, Section 8 of the Pennsylvania Constitution

Next, we turn to the parties' competing assertions regarding the Code's compliance with article I, section 8 of the Pennsylvania Constitution, which provides:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

PA. CONST. art. I, § 8.

The Borough contends the trial court erred when it determined the Code violates Tenants' rights under article I, section 8 because the Code does not provide for notice of the application for an administrative warrant, an opportunity to be heard, notice of the execution of the administrative warrant, or judicial considerations of reasonable restrictions on the inspection. Tenants, meanwhile, argue the trial court should have also concluded the Borough's Code provisions

10

violated their rights under article I, section 8 because they permit the Borough to obtain administrative warrants without individualized probable cause of a housing code violation.

Before analyzing the Pennsylvania Constitution, we recognize the "federal constitution sets the minimum level of constitutional protection below which the states cannot fall." *Commonwealth v. Sell*, 470 A.2d 457, 466 (Pa. 1983). Therefore, we begin our analysis with the Fourth Amendment to the United States Constitution, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. "At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511 (1961).

In *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523 (1967), the United States Supreme Court examined the Fourth Amendment in the context of rental housing inspections. The tenant in *Camara* was charged criminally for refusing to permit a warrantless inspection of his residence under the San Francisco Housing Code. *Id.* at 525. He challenged his criminal charges on the basis that a warrantless search, unsupported by probable cause, violated his Fourth Amendment rights to be free from unreasonable searches. *Id.* Ultimately, the Court determined the tenant "had a constitutional right to insist that the inspectors obtain a warrant to search and that [the tenant] may not constitutionally be convicted for refusing to consent to the inspection." *Id.* at 540.

In its analysis in *Camara*, the Court determined the Fourth Amendment's protections were not limited to searches related to evidence of a crime. *Id.* at 530-31 ("even the most law-abiding citizen has a very tangible interest in limiting the circumstances under which the sanctity of his home may be broken by official authority, for the possibility of criminal entry under the guise of official sanction is a serious threat to personal and family security"). The Court also noted that inspections of rental properties for compliance with housing codes are unlike searches of targeted areas for evidence of a crime. *Id.* at 535. Nevertheless, the Court held that inspections for possible housing code violations represented "significant intrusions upon the interests protected by the Fourth Amendment," such that, absent consent or exigent circumstances, a warrant was required. *Id.* at 534.

The Court explained that "[i]n cases in which the Fourth Amendment requires that a warrant to search be obtained, 'probable cause' is the standard by which a particular decision to search is tested against the constitutional mandate of reasonableness." *Id.* at 535. The Court examined probable cause in the context of administrative search warrants, as follows:

> Where considerations of health and safety are involved, the facts that would justify an inference of 'probable cause' to make an inspection are clearly different from those that would justify such an inference where a criminal investigation has been undertaken. Experience may show the need for periodic inspections of certain facilities without a further showing of cause to believe that substandard conditions dangerous to the public are being maintained. The passage of a certain period without inspection might of itself be sufficient in a given situation to justify the issuance of [a] warrant. **The test of 'probable cause' required by the Fourth Amendment can take into account the nature of the search that is being sought.**
>
> Having concluded that the area inspection is a 'reasonable' search of private property within the meaning of the Fourth Amendment, it is obvious that **'probable cause' to issue a warrant to inspect must**

12

**exist if reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling**. Such standards, which will vary with the municipal program being enforced, may be based upon the passage of time, the nature of the building (e.g., a multifamily apartment house), or the condition of the entire area, but they will not necessarily depend upon specific knowledge of the condition of the particular dwelling. It has been suggested that so to vary the probable cause test from the standard applied in criminal cases would be to authorize a 'synthetic search warrant' and thereby to lessen the overall protections of the Fourth Amendment. But we do not agree. **The warrant procedure is designed to guarantee that a decision to search private property is justified by a reasonable governmental interest. But reasonableness is still the ultimate standard. If a valid public interest justifies the intrusion contemplated, then there is probable cause to issue a suitably restricted search warrant.** Such an approach neither endangers time-honored doctrines applicable to criminal investigations nor makes a nullity of the probable cause requirement in this area. It merely gives full recognition to the competing public and private interests here at stake and, in so doing, best fulfills the historic purpose behind the constitutional right to be free from unreasonable government invasions of privacy.

*Camara*, 387 U.S. at 538 (quotations and citations omitted; emphasis added). The Court also emphasized the "standard of reasonableness" must control any probable cause analysis. *Id.* at 539. Under this standard, the Court acknowledged inspections may still be possible, even without a warrant, in exigent circumstances. *Id.* The Court also noted "in the case of most routine area inspections, there is no compelling urgency to inspect at a particular time or on a particular day." *Id.*

Turning to article I, section 8 of the Pennsylvania Constitution, it is well settled that Pennsylvania courts interpreting provisions of the Pennsylvania Constitution "are not bound by the decisions of the United States Supreme Court which interpret similar (yet distinct) federal constitutional provisions." *Commonwealth v. Edmunds*, 586 A.2d 887, 894 (Pa. 1991). Federal constitutional

13

guarantees act as a foundation upon which the state has the power to build enhanced constitutional protections. *Sell*, 470 A.2d at 466-67.

When considering whether the Pennsylvania Constitution provides greater protections than the United States Constitution, we apply the analysis first set forth in *Edmunds*. *See Commonwealth v. Hawkins*, 718 A.2d 265, 268 (Pa. 1998). Under *Edmunds*, we must consider the following four factors:

1) text of the Pennsylvania constitutional provision;

2) history of the provision, including Pennsylvania case[]law;

3) related case-law from other states;

4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence.

*Edmunds*, 586 A.2d at 895. In addition, "an examination of related federal precedent may be useful as part of the state constitutional analysis, not as binding authority, but as one form of guidance." *Id.* Nevertheless, "it is essential that courts in Pennsylvania undertake an independent analysis under the Pennsylvania Constitution." *Id.*

## 1. Text of Constitutional Provision

We begin with the text of article I, section 8 of the Pennsylvania Constitution, which is fully set forth above. Specifically, the warrant requirement in article I, section 8 provides "no warrant to search any place . . . shall issue without describing [it] as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant." PA. CONST. art. I, § 8. The Fourth Amendment, relevantly, provides "no Warrants shall issue, but upon probable cause, supported

14

by Oath or affirmation, and particularly describing the place to be searched." U.S. CONST. amend. IV.

## 2. History of Pennsylvania Constitutional Provision

Next, we turn to the history of article I, section 8. As the Pennsylvania Supreme Court explained in *Sell*:

> [The] constitutional protection against unreasonable searches and seizures existed in Pennsylvania more than a decade before the adoption of the federal Constitution, and fifteen years prior to the promulgation of the Fourth Amendment. Clause 10 of the Pennsylvania Constitution of 1776 afforded such a guarantee.

*Sell*, 470 A.2d at 466. In *Edmunds*, the Court further explained that

> the original version of the search and seizure provision read as follows:

> > The people have a right to hold themselves, their houses, papers and possessions free from search and seizure, and therefore warrants without oaths or affirmations first made, affording sufficient foundation for them, and whereby any officer or messenger may be commanded or required to search suspected places, or to seize any person or persons, his or their property, not particularly described, are contrary to that right and ought not be granted.

> The above provision was reworded at the time the Pennsylvania Constitution was revised extensively in 1790, and reappeared as Article [I], Section 8. The modern version of that provision has remained untouched for two hundred years, with the exception of the words "subscribed to by the affiant," which were added by the Constitutional Convention of 1873. *Id.*

> The requirement of probable cause in this Commonwealth thus traces its origin to its original Constitution of 1776, drafted by the first convention of delegates chaired by Benjamin Franklin. **The primary purpose of the warrant requirement was to abolish "general warrants," which had been used by the British to conduct sweeping searches of residences and businesses, based upon generalized suspicions. Therefore, at the time the Pennsylvania Constitution**

15

**was drafted in 1776, the issue of searches and seizures unsupported by probable cause was of utmost concern to the constitutional draftsmen.**

*Edmunds*, 586 A.2d at 896-97 (internal citations omitted) (emphasis added).

The Court further explained in *Edmunds* that beginning in roughly the 1970s, the Pennsylvania Supreme Court "began to forge its own path under Article I, Section 8 of the Pennsylvania Constitution, declaring with increasing frequency that Article I, Section 8 . . . embodied a strong notion of privacy, notwithstanding federal cases to the contrary." *Id.* at 898. Specifically, in "*Commonwealth v. DeJohn*[, 403 A.2d 1283, 1291 (Pa. 1979)], [the Pennsylvania Supreme Court] made explicit that "the right to be free from unreasonable searches and seizures contained in Article I, Section 8 of the Pennsylvania Constitution is tied into the implicit right to privacy in this Commonwealth." *Id.*

The Pennsylvania Supreme Court reiterated the connection between article I, section 8 and privacy interests in *Commonwealth v. Alexander*, 243 A.3d 177, 202-03 (Pa. 2020). In *Alexander*, which dealt with a warrantless automobile search, the Court overruled its prior plurality decision in *Commonwealth v. Gary*, 91 A.3d 102 (Pa. 2014), and determined article I, section 8 of the Pennsylvania Constitution "affords greater protection to our citizens than the Fourth Amendment." *Alexander*, 243 A.3d at 181. In overruling *Gary*, the majority in *Alexander* adopted portions of then Justice Todd's, now Chief Justice Todd's, dissenting opinion in *Gary*, as follows:

> Unlike the Fourth Amendment, Article I, Section 8 uses the term "possessions," which our Court has previously interpreted to mean "intimate things about one's person," *Commonwealth v. Russo*, . . . 934 A.2d 1199, 1214-15 ([Pa.] 2007), and also specifies that no warrant to search "any place," or to seize "any . . . things shall issue without . . . probable cause." Pa. Const. art. I, § 8 (emphasis added). Inasmuch as

16

these expansive terms are absent from the Fourth Amendment, this difference in language suggests that the warrant requirement of Article I, Section 8 was intended to protect an individual's privacy interest in all of his or her possessions or things in any place they may be, which would include, by necessity, when they are located inside of an automobile. I would, therefore, conclude that these textual differences support an interpretation of Article I, Section 8 broader than its federal counterpart in regard to the expectation of privacy owners and occupants of automobiles enjoy with respect to their personal possessions transported therein.

*Alexander*, 243 A.3d at 202-03.

While most of the Pennsylvania Supreme Court's article I, section 8 jurisprudence arises in the context of criminal investigations and searches, the Court has routinely recognized a citizen's privacy interests are highest in one's home. *See, e.g.*, *Commonwealth v. Brion*, 265 A.2d 287, 289 (Pa. 1994); *Commonwealth v. Bricker*, 666 A.2d 257, 261 (Pa. 1995) ("We have long recognized the sanctity of the home in this Commonwealth . . . ."); *Commonwealth v. Shaw*, 383 A.2d 496, 499 (Pa. 1978) ("Upon closing the door of one's home to the outside world, a person may legitimately expect the highest degree of privacy known to our society.").

In addition, Pennsylvania Courts have analyzed *Camara* in a number of different contexts. In *Interest of Y.W.-B.*, 265 A.3d 602, 611 (Pa. 2021), the Pennsylvania Supreme Court considered what constituted probable cause for a child protective services agency to obtain an order compelling parents to allow a search of their home for evidence related to child abuse and neglect. The Court began by noting:

It is well established that "[p]robable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in and of themselves to warrant a person of reasonable caution in the belief that a search should be conducted." *Commonwealth v. Jacoby*, . . . 170 A.3d 1065, 1081-82 ([Pa.] 2017). To assess whether probable cause has been

17

established, the issuing authority makes a "practical, common-sense decision" based on the totality of the circumstances and the information in the affidavit . . . , whether, given the relative veracity and basis of knowledge of persons supplying hearsay information, **there is a fair probability that relevant evidence will be found in a particular place**. *Id.* at 1082.

*Interest of Y.W.-B.*, 265 A.3d at 618 (emphasis added). Additionally, the Court reiterated that consent to a search or exigency could constitute legal justification for a search without a warrant. *Id.* at 619.

The Court in *Interest of Y.W.-B.* also reviewed *Camara*, characterizing it as "the [United States] Supreme Court's first blessing of what has come to be known as a 'dragnet search,' namely one in which the government searches every person, place, or thing in a specific location or involved in a specific activity." *Id.* at 622 (citations omitted). The Court further explained:

Dragnet searches are not predicated on individualized showings of probable cause, nor indeed on any kind of individualized suspicion. On the contrary, the hallmark of a dragnet search is its generality, as it reaches everyone in a category rather than only a chosen few. In addition to the safety-related inspection of every home in a given area in *Camara*, other dragnets include checkpoints where government officials stop, for example, every car or every third car driving on a particular roadway, and drug testing programs that require every person involved in a given activity to submit to urinalysis.

Dragnet searches are justified if they satisfy a balance of interests and are necessary because a regime of individualized suspicion could not effectively serve the government's interest. In *Camara*, the Court suggested that if the legislative standards were reasonable, probable cause existed because "the only effective way to seek universal compliance with the minimum standards required by municipal codes is through routine periodic inspections of all structures." *Camara*, 387 U.S. at 535-36, 38.

*Interest of Y.W.-B.*, 265 A.3d at 622-23 (citations omitted). Ultimately, the Court did not apply *Camara* in *Interest of Y.W.-B.* because it determined the search of a home for individualized evidence of child protective services issues was "neither a dragnet search nor a search of an individual with a reduced expectation of privacy." *Id.* at 624. As a result, and although the Court discussed *Camara* at length, the Court did not undertake an analysis to determine if article I, section 8 provided greater protections than the Fourth Amendment for rental property inspections.

In determining whether other dragnet-style searches are reasonable under article I, section 8, the Pennsylvania Supreme Court has balanced the competing concerns of the government against the intrusion upon an individual's privacy. *See Commonwealth v. Cass*, 709 A.2d 350, 360-61 (Pa. 1998); *Commonwealth v. Tarbert*, 535 A.2d 1035, 1042-43 (Pa. 1987); *Commonwealth v. Blouse*, 611 A.2d 1177, 1179-80 (Pa. 1992). Specifically, the Court explained "[t]he determination of whether a general search is reasonable requires a balance of the competing concerns. Where the objective of the search outweighs the intrusion occasioned by the search it will be reasonable, and thus, constitutional to conduct a general search." *Cass*, 709 A.2d at 360 (citing *Tarbert*, 535 A.2d at 1042-43; *Blouse*, 611 A.2d at 1179-80).

In *Tarbert* and *Blouse*, both of which considered the constitutionality of highway roadblocks, the Pennsylvania Supreme Court determined the "state interest in removing dangerous drivers from the highways" was "of grave importance" while the "intrusion suffered by the drivers during the investigation . . . was . . . minimal. *Cass*, 709 A.2d at 361 (citing *Tarbert*, 535 A.2d at 1042-43; *Blouse*, 611 A.2d at 1179-80).

This Court addressed rental inspections in *Commonwealth v. Tobin*, 828 A.2d 415 (Pa. Cmwlth. 2003). In *Tobin*, this Court considered whether an apartment owner could be "criminally convicted for refusing to allow a code enforcement inspector access to the residential apartments he owns and leases in the absence of a search warrant." *Id.* at 418-19. This Court explained there were two different types of search warrants, the second of which being "an administrative warrant, which allows a municipal official's inspection of premises to ensure compliance with various municipal codes." *Id.* at 419 (citing *Camara*). This Court further explained that "[w]hile probable cause is required for both types of warrants, for the administrative search warrant, probable cause exists 'if reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling.'" *Id.* at 420 (quoting *Camara*, 387 U.S. at 538).

This Court then applied *Camara*, and determined the ordinance at issue, which authorized administrative warrants, satisfied the probable cause test because it contained "a general inspection schedule established by clearly identified districts, together with a 'minimum standards checklist.'" *Id.* at 423. Consequently, this Court explained that "**obtaining an administrative warrant should be a matter of routine**." *Id.* (emphasis added). The municipality in *Tobin*, however, did not obtain an administrative search warrant. *Id.* As a result, this Court overturned Tobin's conviction for refusing to permit a warrantless inspection. *Id.* at 423-24. Despite analyzing *Camara*, this Court was not presented with an article I, section 8 claim in *Tobin*. Consequently, when we applied *Camara* in *Tobin* we did so without the opportunity to consider whether the Pennsylvania Constitution afforded greater protections than the Fourth Amendment.

20

### 3. Case Law from Other States

Turning to the third *Edmunds* factor, the Borough notes that "[a]t least fifteen (15) states, including Pennsylvania, have applied *Camara* and determined that administrative warrants are legally sufficient for rental inspections." *See* Borough's Br. at 34-35. While it may be true that 15 states have applied *Camara*, many of those states, including Pennsylvania, were not asked to determine whether their own state constitutions provided greater protections than the Fourth Amendment. *See, e.g.*, *Tobin*; *Interest of Y.W.-B.* In addition, unlike Pennsylvania, many of those states have interpreted their state constitutional protections against searches and seizures as offering the same protection as the Fourth Amendment. *See, e.g.*, *Ashworth v. City of Moberly*, 53 S.W.3d 564 (Mo. Ct. App. 2001).

In *City of Golden Valley v. Wiebesick*, 899 N.W.2d 152, 156 (Minn. 2017), the Minnesota Supreme Court considered whether the Minnesota Constitution provided greater protections than the Fourth Amendment by "requir[ing] probable cause of the sort needed in a criminal investigation for a warrant to inspect a rental unit for housing code violations." The Minnesota Supreme Court started by announcing Minnesota's test for departing from the federal constitution, which "favor[s] uniformity with the federal constitution because of the 'primacy of the federal constitution in matters affecting individual liberties' and to encourage consistency in constitutional law in state and federal courts." *Id.* at 157 (citations omitted). Under Minnesota's test, Minnesota departs from federal precedent only when it has a "'clear and strong conviction that there is a principled basis' to do so." *Id.* (citation omitted).

The Minnesota Supreme Court also took a "restrained" approach because the Fourth Amendment is "'textually identical' in all relevant respects" to Minnesota's

constitutional provisions. *Id.* at 158 (citation omitted). The court noted Minnesota's constitution was first adopted in 1857 and that its drafters "intended the federal and state provisions to be identical." *Id.* (citations omitted). Accordingly, Minnesota adopted its constitution more than 80 years after Pennsylvania adopted its first constitution and nearly 70 years after the United States ratified its Constitution.

Under this deferential framework, the Minnesota Supreme Court concluded its constitution did not provide greater protections than the Fourth Amendment. *Id.* at 154. The Court noted tenants are given "24 hours' notice before an inspection occurs," and that Minnesota law requires landlords to make a "good faith effort to give the residential tenant reasonable notice . . . of the intent to enter." *Id.* at 166 (citation omitted). Even with these protections, however, the Court specified rights which tenants must be afforded to adequately protect their privacy interests. *Id.* at 168. First, absent exigent circumstances, the tenant must receive reasonable notice and an opportunity to be heard at the warrant hearing. *Id.* In other words, administrative search warrants "should not be granted ex parte." *Id.* Second, the tenants must be allowed to "advocate for reasonable restrictions to the warrant" at the hearing. *Id.* Finally, the court issuing the warrant "must take care to impose a 'suitably restricted search warrant,'" which may include limitations on the timing and scope of the inspection, as well as who is permitted to be present. *Id.* (quoting *Camara*, 387 U.S. at 539).

### 4. Policy Considerations

Regarding the final *Edmunds* factor, the Borough argues that the Code provisions at issue help ensure the health, safety, and welfare of all tenants in the Borough. *See* Borough's Br. at 37. Specifically, the Borough argues periodic rental inspections are "the only effective way to ensure safety in rental properties as code

violations or hazardous conditions cannot be seen from the outside of a residence." *Id.* at 38. In response, Tenants assert the overriding policy consideration in this matter should be the preservation of privacy within one's home.

In evaluating each of the four *Edmunds* factors, we conclude that article I, section 8 of the Pennsylvania Constitution provides greater protections in the area of probable cause to obtain a search warrant for a rental inspection than the Fourth Amendment. Pennsylvania courts have consistently highlighted the importance of its citizens' rights to personal privacy within their homes and have frequently departed from Fourth Amendment jurisprudence when its citizens' rights to personal privacy are implicated. Pennsylvania prohibited searches unsupported by probable cause before the United States Constitution was enacted to prohibit, in part, the government from conducting "sweeping searches of residences and businesses, based upon generalized suspicions." *See Edmunds*, 586 A.2d at 897. As a result, article I, section 8 was specifically designed to prevent the issuance of a warrant on anything less than individualized probable cause.

Contrary to the United States Supreme Court's interpretation of the Fourth Amendment in *Camara*, and contrary to many other states that have considered the issue, Pennsylvania's Constitutional drafters designed the probable cause standard for obtaining a search warrant to be established only by a showing that "there is a fair probability that relevant evidence will be found in a particular place." *Jacoby*, 170 A.3d at 1082. As this Court recognized in *Tobin*, *Camara's* probable cause test reduces the rental inspection warrant procedure to a rubber stamp. *See Tobin*, 828 A.2d at 423 ("obtaining an administrative warrant [under *Camara's* test] should be a matter of routine"). This does not comport with the history of article I, section 8 or Pennsylvania's protection of the right to privacy in one's home.

23

The Borough urges us to apply the Pennsylvania Supreme Court's analysis of dragnet-style searches in *Interest of Y.W.-B.*, but we are not persuaded to do so. Even though the Code's provisions authorizing administrative warrants for biennial rental inspections apply to all rental properties within the Borough and are designed to ensure uniformity and compliance with the Code's health and safety provisions, when the Borough obtains a *warrant* to conduct a biennial rental inspection, it is not engaging in a dragnet-style search. *See Interest of Y.W.-B.*, 265 A.3d at 622 ("Dragnet searches are not predicated on individualized showings of probable cause, nor indeed on any kind of individualized suspicion."). Instead, the Borough is expressly engaging in a search which must be supported by probable cause. PA. CONST. art. I, § 8 ("no warrant to search any place . . . shall issue . . . without probable cause").

Here, the Borough's biennial rental inspection warrants are, at best, based on generalized suspicions. Therefore, we conclude the Borough's Code provisions authorizing administrative warrants for biennial[10] rental inspections on less than individualized probable cause are facially unconstitutional under article I, section 8 of the Pennsylvania Constitution.[11]

## IV. Conclusion

Having so concluded, we affirm the trial court's order to the extent it denied the Borough's motions for summary judgment, reverse the trial court's order to the extent it denied Tenant's motion for summary judgment regarding facial unconstitutionality, and reverse the trial court's order to the extent it granted

---

[10] Tenants' challenge, and consequently our holding, is limited to the Borough's Code provisions authorizing administrative warrants to conduct biennial inspections.

[11] Our conclusion the Borough's Code provisions authorizing administrative warrants for biennial rental inspections on less than individualized probable cause of a code violation are facially unconstitutional renders the parties' remaining issues moot.

24

Tenants' as-applied challenge, granted Tenants an injunction, and required the Borough to amend its Code. Further, we remand this matter to the trial court to enter an order: (a) declaring the relevant Code provisions unconstitutional, (b) denying Tenants' other motions for summary judgment, (c) enjoining the Borough from applying for, obtaining, or executing administrative warrants to conduct biennial rental inspections on less than individualized probable cause of a housing code violation, and (d) denying Tenants' request for nominal damages.

_____
STACY WALLACE, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Dorothy Rivera, Eddy Omar Rivera, Kathleen O'Connor, Rosemarie O'Connor, Estate of Thomas O'Connor, and Steven Camburn | : | **CASES CONSOLIDATED** |
| | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| Borough of Pottstown and Keith A. Place, | : | |
| Appellants | : | No. 190 C.D. 2024 |
| | | |
| Dorothy Rivera, Eddy Omar Rivera, Kathleen O'Connor, Rosemarie O'Connor, Estate of Thomas O'Connor, and Steven Camburn, | : | |
| | : | |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| Borough of Pottstown and Keith A. Place | : | No. 224 C.D. 2024 |
| | : | |

# **O R D E R**

**AND NOW**, this 9th day of December 2025, the January 24, 2024 order of the Court of Common Pleas of Montgomery County (the trial court) is:

1) **AFFIRMED** to the extent the trial court denied the motions for summary judgment filed by the Borough of Pottstown and Keith A. Place (collectively, the Borough).

2) **REVERSED** to the extent it denied the motion for summary judgment filed by Dorothy Rivera, Eddy Omar Rivera, Kathleen O'Connor, Rosemarie

O'Connor, Estate of Thomas O'Connor, and Steven Camburn (collectively, Tenants) seeking a declaration that the Borough's Code provisions authorizing administrative warrants for biennial rental property inspections are facially unconstitutional under article I, section 8 of the Pennsylvania Constitution, PA. CONST. art. I, § 8, because they authorize administrative warrants based upon less than individualized probable cause of a housing code violation.

3) **REVERSED** to the extent it granted Tenants' as-applied challenge, granted Tenants' request for an injunction, and required the Borough to amend its Ordinances.

This matter is **REMANDED** to the trial court for entry of an order: (a) declaring Section 11-203 of the Borough's Code of Ordinances unconstitutional to the extent it allows the Borough to obtain administrative search warrants on less than individualized probable cause, (b) denying Tenants' other motions for summary judgment, (c) enjoining the Borough from applying for, obtaining, or executing administrative warrants to conduct biennial rental inspections on less than individualized probable cause of a housing code violation, and (d) denying Tenants' request for nominal damages.

Further, upon consideration of Tenants' letter dated April 28, 2025, purportedly filed pursuant to Pa.R.A.P. 2501(a), and the answer thereto, the filing was not an appropriate Rule 2501 filing and is hereby **STRICKEN**.

Jurisdiction relinquished.

_____
STACY WALLACE, Judge